19cv1712 JNELIB

**RECEIVED**
BY MAIL

**JUN 27 2019**

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States ex rel.
Daniel Leroy Patten,

        Plaintiff,

v.

Aitkin County Health and
Human Services and her
John and Jane Doe
Accomplices.

        Defendant[1].

Civil No.

_____

**COMPLAINT FOR VIOLATIONS OF THE**
**FALSE CLAIMS ACT (FCA), 31**
**U.S.C. § 3729 _et seq_.**

### INTRODUCTION

**1.**   This action is brought for the United States Government
ex rel. Daniel Leroy Patten against Defendant Aitkin County
Health and Human Services and her John and Jane Doe
Accomplices("Defendant" or "the Defendant"), in their
official capacity, for violations of the FCA, 31 U.S.C. §
3729, _et seq_.

### NATURE OF THE ACTION

2.   Plaintiff alleges that an Evaluation Report ("E.R."),
State-Operated Human Services ("SOS[2]"), dated February 2013,
reveals at page 58 that the Minnesota Sex Offender Program

---

[1] Defendant and relative pronouns throughout this complaint, shall be rendered in the singular.
[2] SOS may designate the singular or plural form, as required by context, throughout this complaint.

1

**S C A N N E D**

**JUN 2 8 2019**

**U.S. DISTRICT COURT ST. PAUL**

("MSOP") was moved out of SOS' purview in 2008 by the Minnesota Department of Human Services. The same E.R. explains at pages 3, "We found a wide range of significant problems, which we discuss in this report. Of particular concern, we found that the department's approach to managing state-operated services has caused confusion and resulted in inadequate oversight and accountability."

3.   Plaintiff alleges that Pages 11 and 12 of the aforementioned E.R. reveal that at least twenty-seven of Minnesota's SOS are certified to receive Medicare or Medicaid payments.

4.   Plaintiff alleges that the U.S. Centers for Medicare and Medicaid Services (CMS) is involved in an obligatory certification process but may accept accreditation by the Joint Commission as proof that a facility complies with the CMS requirements needed for federal repayments. Certified establishments qualify for Medicare and Medicaid payments. The aforementioned E.R. is incorporated by reference. Plaintiff alleges further that MSOP is not, and has never been, accredited by any independent medical accreditation society, and Defendant is well aware of MSOP's lack of qualification as set forth herein.

5.   Plaintiff alleges that Defendant, on or about September 14, 2017, in the person of Jessica Schultz, Supervisor, executed a petition to employ "the State's tactic" to incarcerate DLP for the rest of his life as a means to defraud the United States Government by way of a billing scheme for unnecessary and undelivered medical care, a swindle that is, in every respect, a fraudulent means to embezzle funds from the United States Government, an anomalous method of boosting a rural Minnesota economy, a fraudulent system to endow a state prison. A copy of a November 13, 2013, letter from Minnesota Governor Mark Dayton to Ms. Lucinda Jesson, his Commissioner over the Minnesota Department of Human Services, is attached hereto. Plaintiff alleges that the November 13, 2013, defines and explains the capricious application of this deliberately unconstitutional "State's tactic."

6.   Plaintiff alleges that on September 14, 2017, as an element to the above-mentioned petition, Defendant submitted her Exhibit 12-790, which is attached hereto. That exhibit is evidence that John Latson, MS, LP, MCF-ML, Psychological Services Director, examined DLP on or about

March 15, 2006, and recognized: "He has no recent or current mental health issues."

7.   Plaintiff alleges that on September 14, 2017, as an element to the above-mentioned petition, Defendant submitted her Exhibit 12-862, which is attached hereto. That exhibit is evidence that Aaron Lect, MSEd, LPC, NCC, Behavioral Health Services Therapist, examined DLP on or about July 23, 2009, and agreed then confirmed: "He has no recent or current mental health issues."

8.   Plaintiff alleges that on September 14, 2017, Defendant did not assert in her petition any criminal and/or sexual behavior by DLP that did not occur prior to 1997, thereby evidencing remission.

9.   Plaintiff alleges that on September 14, 2017, Defendant did not allege so much as a current[3] threat issued by DLP to any other person, whether natural or artificial, thereby further verifying remission on the part of DLP.

10.  Plaintiff alleges that on September 14, 2017, Defendant initiated a process that, by Minn. Stat., section 253B.03 RIGHTS OF PATIENTS[4] and the SPECIAL RULES OF PROCEDURE

---

[3] The term "current," as used here indicates a time frame from mid-1997 until the present.
[4] *see*: Subd. 10. *Notification (7)* the right to an external appeal process under section 62Q.73, including the right to a second opinion...[incorporated herein by reference]

GOVERNING PROCEEDINGS UNDER THE MINNESOTA COMMITMENT AND
TREATMENT ACTS WITH AMENDMENTS EFFECTIVE THROUGH OCTOBER 1,
2016, warranties to DLP the opportunity to an independent
evaluation to ascertain the true nature of his mental
health, or to dispute negative findings.

11.  Plaintiff alleges that on July 9, 2017, with knowledge
of "the State's tactic," DLP made an offer under the
Uniform Commercial Code to Defendant, through her attorney,
to undergo an evaluation and asked for a guarantee that the
examiner would be unencumbered by the obvious conflicting
interest associated with accepting a check from State of
Minnesota. Plaintiff alleges further that this offer was
submitted by Defendant as her exhibit 14-004 and is
attached hereto. Plaintiff alleges that Defendant refused
that offer to ascertain the true nature of DLP's mental
health, because she desired to purposefully keep her data
vague for the purpose of fostering a false record and
statements material to a false or fraudulent claim, as set
forth herein.

12.  Plaintiff alleges that on November 30, 2017, with
knowledge of Dr. Allen Frances' work, DLP offered again to
undergo an examination by an independent consultant, first

by Dr. Allen Frances and, second, by Dr. Michael G.

Farnsworth. Plaintiff alleges that Defendant rejected these

offers to establish the true nature of DLP's mental health,

because she preferred to purposefully keep things ambiguous

in order to nurture a false record and statements material

to a false or fraudulent claim, as set forth herein. Both

offers were duly recorded in a document titled "DANIEL L.

PATTEN PSYCHOLOGICAL EXAMINATION, Aitkin County SDP/SPP

Civil Commitment Court File No. 01-PR-17-186 , November 30,

2017, at the Minnesota Sex Offender Program," and that

manuscript is attached hereto.

13.  Plaintiff alleges that on September 14, 2017, Defendant

asserted in her petition four legal claims[5]. Defendant's

petition is incorporated by reference. Plaintiff alleges

that Defendant affirmed by her agents, under penalty of

---

**II.  LEGAL CLAIMS.**

4.   The observations of Patten's behavior that provide a factual basis for believing that he is a "sexual psychopathic personality," as defined in Minn. Stat. § 253D.02, subd. 15 (2016), and in need of hospitalization are set forth below in sections III and IV.

5.   The observations of Patten's behavior that provide a factual basis for believing that he is a "sexual dangerous person," as defined in Minn. Stat. § 253D.02, subd. 16 (2016), and in need of hospitalization are set forth below in sections III and IV.

6.   No suitable alternative to involuntary hospitalization exists for the reasons set forth below.

7.   The Aitkin County Attorney is satisfied that good cause exists for this petition pursuant to Minn. Stat. ch. 253D (2016).

[5] Page 2...

perjury, three times that Plaintiff needed hospitalization and specified that there was no suitable alternative to an involuntary method of hospitalization; at pages 2 and 85, she asserted, under penalty of perjury, that MSOP is the hospital she endorsed[6]. Plaintiff alleges that Defendant refused in her petition to include the evidence in Governor Dayton's November 13, 2013, letter to Commissioner Jesson; wherein, he divulges that the Minnesota Legislature and every administration leading up to him has intentionally avoided revising state law or to establish funding for constitutionally sound facilities, programs, and services; she did this decisively to keep things vague in order to

---

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court commit the Respondent, Daniel Leroy Patten, as a sexually dangerous person and sexual psychopathic personality to the Minnesota Sex Offender Program.

Dated: _Sept 14,_____, 2017          _Jessica Schultz_____
                                        Jessica Schultz, Aitkin County Health and
                                        Human Services Supervisor
                                        PETITIONER

Subscribed and sworn to before me
this _14_ day of _September_, 2017.

_____          SONDRA L. SWANSON
NOTARY PUBLIC                   NOTARY PUBLIC-MINNESOTA
                                My Comm. Exp. Jan. 31, 2021

[6] Page 85...

7

purposefully generate a false record or statements material to a false or fraudulent claim, as set forth herein.

14.  Plaintiff alleges that in December of 2014, or thereabout, The Honorable Donovan W. Frank, received an expert report inscribed by Gregory J. Van Rybroek, Ph.D., J.D. That report is attached hereto. Dr. Rybroek concluded his final report in this fashion:

> "A. Future Plans for the Conditions of Confinement, Finally, Defendants' Report indicates that numerous positive internal changes have taken place at the MSOP, or are forthcoming, such as increased visiting space, MP3 players, and allowing open-toed footwear. Yet, the report elides on the fundamental infirmity of the MSOP: regardless of the conditions of confinement, it is not a proper clinical system of care because the continuum has not allowed for release of virtually any Patient in it since its inception. Until and unless the MSOP activates a full spectrum of clinical care for patients that actually results in movement through the treatment program and eventual release, understanding that security features do need to be balanced into the MSOP's program, the greater weight is tipped toward the program process and outcome as being punitive. If there is no hope to reach the goal of provisional release, then it is illogical from a clinical and individual psychological perspective to interpret the MSOP as nothing other than an expensive preventive detention program, a Potemkin Village, and not a meaningful treatment program. The old adage, 'The proof of the pudding is in the eating' applies here in that there is meager proof at this time that provisional release is a standard part of the program. Until there is a clinical program operating with inpatient and outpatient components, the system is not *bona fide*, and therefore the conditions of confinement fall outside the range of acceptable practice."

15.  Plaintiff alleges that the Executive Director MSOP, Nancy Johnston, testified on March 2, 2015, before The Honorable Donovan W. Frank, about various Rule 26 Variances[7]. She spoke about Rule 26 licensing and said it was born out of their Rule 36. Rule 36 deals with serving

---

[7] See: Court Trial Proceedings, Vol. XV, dated March 2, 2015, @ P. 3198-3199, 3201, 3336, 3428-3429 Case No. 11-CV-3659(DWF/JJK)

the needs of people who are properly diagnosed as mentally ill and dangerous, but the clientele at the MSOP are mostly not either of these; wherefore, something else had to be done. Many modifications were made to Rule 36, because the "clientele" at MSOP do not fit into the mold of mental patients. This transcript is incorporated by reference.

16.  Plaintiff alleges that the Clinical Director MSOP, Jannine Hébert, gave testimony on March 5, 2015[8], before The Honorable Donovan W. Frank, and explained that the MSOP has not been a hospital since at least 2008. The MSOP does not work using a medical model, nor is it concerned with patients needing medical care; rather, there is an important distinction in her opinion. The MSOP is a "treatment program" that deals with folks who are "not sick." Ms. Hébert explains throughout that MSOP is a psycho-educational program and speaks eight different times about how her "clients" embroil themselves in this "discipline." This transcript is incorporated by reference.

17.  Plaintiff alleges that the Deputy Director MSOP, James Berg, testified on March 10, 2015, before The Honorable Donovan W. Frank, and clarified under cross-examination

---

[8] See: Court Trial Proceedings, Vol. XVIII, dated March 5, 2015, @ PP. 3957-3959, 3960, 4001-4002, 4021, 4038, 4079, 4096, 4137, 4203-4204 Case No. 11-CV-3659(DWF/JJK)

that it is not even possible to complete the MSOP[9]. This transcript is incorporated by reference.

18.  Plaintiff alleges that on or about February 22, 2018, Defendant's own expert, Dr. Peter Marston, testified that DLP is remitting. This testimony is found on page 333 of the trial transcript. Plaintiff further alleges that, by her agents, Defendant received the uncontested evidence that no psycho-pathology currently functions in DLP, yet she did not pull her petition to invoke "the State's tactic" and impose a "virtual life sentence." This page of the trial transcript is incorporated by reference.

19.  Plaintiff alleges that on May 15, 1967, the United States Supreme Court pronounced, "In Kent v United States, …, we stated that the Juvenile Court Judge's exercise of the power of the state as *parens patriae* was not unlimited[10]."

20.  Plaintiff alleges that on April 30, 1979, the United States Supreme Court spoke again regarding the *doctrine of parens patriae*, "The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens

---

[9] See: Court Trial Proceedings, Vol. XX, dated March 10, 2015, @ PP. 4410-4411, 4574, 4633, 4657-4658 Case No. 11-CV-3659(DWF/JJK)
[10] [387 US 30]

who are unable because of emotional disorders to care for themselves…[11]"

21.  Plaintiff alleges that Defendant's willful scheme is designed to fund a state prison by fraudulent means, via misappropriating CMS currencies, or the monies of other federal agencies, rather than any exercise of otherwise legitimate *parens patriae* powers of the state.

22.  Plaintiff alleges that on February 22, 2018, Aric Welle, an Officer of the Minnesota Department of Corrections, testified that CORE Professional Services exists in Brainerd and Sartell, Minnesota, at page 431-432 of the "civil commitment" trial of DLP. This official also testified that multiple "Sex Offenders" on his caseload use these community based services. This trial transcript is incorporated by reference.

23.  Plaintiff alleges that CORE Professional Services offers the same basic psycho-educational teachings as does the MSOP. That Aric Welle has multiple clients on his caseload evidences that A) alternative programming does exist in Minnesota, B) Defendant's acts and omissions, as focused on DLP, are capricious, and C) the processes used

---

[11] [441 US 426]

by Defendant are hostile and discriminating; they are offensive to the protecting clauses of the Fourteenth Amendment[12]. Plaintiff alleges that Defendant employs her scheme to embezzle from the Plaintiff via false claims.

24. Plaintiff seeks relief as authorized by the FCA, 31 U.S.C. § 3729 et seq., and as may be deemed appropriate by the Court.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action pursuant to the FCA, 31 U.S.C. § 3732. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because the acts and omissions giving rise to these claims occurred in the State of Minnesota and the Defendant exists in the State of Minnesota.

## PARTIES

### I. Plaintiff

26. Plaintiff is the United States Government ex rel. Daniel Leroy Patten, and has been and continues to be injured by the acts and omissions of Defendant.

---

[12] [197 F. 957]

27.  The *Qui Tam* Relator is named and locatable at:

> Daniel Leroy Patten
> 1111 Hwy 73
> Moose Lake, Minnesota [55767]

## II. Defendant

28.  Defendant is Aitkin County Health and Human Services

("ACHHS") and her John and Jane Doe Accomplices.

29.  Defendant is locatable through and/or at:

> Aitkin County Health and Human Services
> 204 1st Street NW
> Aitkin, MN 56431-1260
> Phone: 1-800-328-3744 or 1-218-927-7200
> Fax # 1-218-927-7210

## CLAIMS:

### Count I

### VIOLATION OF THE
### FALSE CLAIMS ACT, 31 U.S.C.S. 3729-3733

30.  Plaintiff incorporates all previous allegations as if
fully set forth herein.

31.  The False Claims Act provides that it is unlawful for
any person to knowingly present or cause to be presented a
false or fraudulent claim, as set forth herein for payment
or approval. 31 U.S.C.S. 3729(a)(1). Plaintiff alleges
that, on or about September 14, 2017, Defendant
capriciously selected DLP to suffer "a virtual life
sentence" as a perpetual victim under "the State's tactic"

and as an involuntary pawn to be exploited for funding a state prison by misappropriated CMS currencies—specifically by embezzling Medicare and through fraudulent insurance claims.

32.  Plaintiff alleges that, on or about February 22, 2018, Aric Welle testified, as an officer of the Minnesota Department of Corrections, and explained that numerous offenders on his caseload are in the community, attending sex offender treatment and programming through CORE Professional Services in Brainerd and/or Sartell, Minnesota. Plaintiff alleges that this testimony demonstrates the arbitrary imposition of a hostile and discriminating stratagem by Defendant to ensnare and exploit DLP, rather than the other various offenders Officer Aric Welle testified about, for funding a state prison by misappropriating federal currencies.

33.  Plaintiff alleges that, for those offenders identified by Officer Aric Welle as living in the community and attending sex offender treatment and programming through CORE Professional Services in Brainerd and/or Sartell, Minnesota, the billing for services is paid, at least in part, by the offenders rather than federal agencies.

34.  Plaintiff alleges that, on September 14, 2017, Defendant initiated "the State's tactic" upon DLP by executing a petition to "civilly commit" DLP with full knowledge that DLP suffered under no psycho-pathology inhibiting his ability to care for himself in the community.

35.  Plaintiff alleges that, in the person of Jessica Schultz, Defendant purposefully swore under penalty of perjury, in her September 14, 2017, petition, that the MSOP is a hospital, yet she already understood that it is not; she did this purposefully to qualify all false claims made under "the State's tactic," relative to Case Number 2270600, and/or otherwise, throughout Minnesota's counties.

36.  Plaintiff alleges that, on or about October 23, 2017, Defendant, in the person of Chris H., threatened DLP and told him that, if he did not execute a written request to have federal agencies reimburse Defendant for expenses that all financial assistance to DLP would be terminated. Plaintiff alleges that this situation would leave DLP imprisoned for life at the MSOP, without employment, and with no lawful means to acquisition daily necessities such as body soap, clothing, or even stationery supplies.

Plaintiff alleges that, on or about October 23, 2017, in a telephone conversation between DLP and the Defendant, in the person of Chris H., Financial Worker, that the Defendant revealed to DLP that the MSOP gets all their coinage via these federal reimbursements.

37.  Plaintiff alleges that, on September 14, 2017, Defendant initiated "the State's tactic" upon DLP for the deceitful purpose of fostering the State defrauding the CMS through undeserved repayments, as set forth herein.

38.  Plaintiff alleges that on June 14, 2019, the Records Production Specialist MSOP, Stana Davis, confirmed that in 2018, the MSOP squandered $99,092,800.00 on non-medical costs and, in 2019, according to that same report[13], the misspent dollar amount was $99,471,600.00 on non-medical costs. Of costs mentioned within the report, $89,334,100.00 was misappropriated from Plaintiff in 2018 and $86,276,000.00 in 2019. The reported fiscal years ran from July 1, 2017 to June 30, 2018; and, July 1, 2018 to June 30, 2019, respectively. This Stana Davis report is attached hereto.

---

[13] An answer to Data Request #1221, received on June 5, 2019.

39.  Plaintiff alleges that Defendant's fraud, "the State's tactic," hinges upon three items: 1) Defendant's signature on the petition is key, creating a ostensibly valid application; 2)  Minn. Stat. § 246.53; and 3) the Order issued in response to Defendant's September 14, 2017, petition; in particular, clauses two and three of the Order are also needed.

**THE COURT ORDER:**

IT IS HEREBY ORDERED THAT:
1. Respondent, Daniel Leroy Patten, shall be indeterminately committed as a "Sexually Dangerous Person" and a person with a "Sexual Psychopathic Personality" to the Minnesota Sex Offender Program(s) (MSOP) in St. Peter and Moose Lake, Minnesota.
2. A copy of this Order, the Petition for Commitment, the reports from the court-appointed examiner, all trial exhibits, and any available medical and behavioral information shall be provided to the Minnesota Sex Offender Program, in accordance with Minn. Stat. § 253B.I 0, subd. I. Petitioner is authorized to provide those records directly to the Minnesota Sex Offender Program.
3. Cost of care will be paid in accordance with Minn. Stat. §§ 246.50 to 246.55.
4. Judgement on this Order for Commitment shall be entered immediately and without undue delay.
5. The Rights of Patients, as provided in Minn. Stat.§§ 253B.03, 253D.I 7, and 253D.18, shall be incorporated by reference.
6. The attached Memorandum shall be incorporated herein.
-71-

40.  Plaintiff alleges that clause two of the Order issued in July of 2018 authorizes Defendant to give or exchange any type of medical data with the MSOP, even though the MSOP is not a medical facility. Plaintiff further alleges that clause three of the Order issued commands fraud to occur by way of Minn. Stat. § 246.53.

17

**246.53 CLAIM AGAINST ESTATE OF DECEASED CLIENT:**

**Subdivision 1. *Clients estate.*** Upon the death of a client, or a former client, the total cost of care given the client, less the amount actually paid toward the cost of care by the client and the clients relatives, shall be filed by the commissioner as a claim against the estate of the client with the court having jurisdiction to probate the estate and all proceeds collected by the state in the case shall be divided between the state and county in proportion to the cost of care each has borne.

**Subd. 2. *Preferred status.***

An estate claim in subdivision 1 shall be considered an expense of the last illness for purposes of section 524.3-805.

If the commissioner of human services determines that the property or estate of any client is not more than needed to care for and maintain the spouse and minor or dependent children of a deceased client, the commissioner has the power to compromise the claim of the state in a manner deemed just and proper.

**Subd. 3.** [Repealed, 2009 c 79 art 3 s 19]

**Subd. 4. *Exception from statute of limitations.*** Any statute of limitations that limits the commissioner in recovering the cost of care obligation incurred by a client or former client shall not apply to any claim against an estate made under this section to recover the cost of care.

41.   Plaintiff alleges that Defendant and her accomplices are also relying upon § 246.53, subd. 2, and the hoax is not only to pretend there is a psycho-pathology to justify false claims on the "civil commitment," but to consider any invented cost as an expense of the "last illness" for the purposes of section 524.3-805.

42.   Plaintiff alleges that Defendant, in her official capacity, was aware of the policies and practices that would be and were implemented under "the State's tactic" to knowingly misappropriate federal moneys to fund a state prison, specifically the MSOP, and did nothing to change

these policies and practices or to prevent this conduct from occurring and actively participated in such conduct[14].

43.  Plaintiff has been subject to and injured by these alleged violations as a direct and proximate result of Defendant's acts and omissions as specifically set forth above.

44.  Unless relief is granted, Plaintiff will continue to be injured as a direct and proximate result of Defendant's acts and omissions specifically set forth above.

### Claim II

### VIOLATION OF THE
### FALSE CLAIMS ACT, 31 U.S.C.S. 3729-3733

45.  Plaintiff incorporates all previous allegations as if fully set forth herein.

46.  The False Claims Act provides that it is unlawful for any person to knowingly present or cause to be presented a false or fraudulent claim, as set forth herein for payment or approval. 31 U.S.C.S. 3729(a)(1). Plaintiff alleges that, in mid-March of 2019, DLP received an Explanation of Medical Benefits (EOMB) dated February 23, 2019. The EOMB concerned Claim Control Number 51904600400039993 and

---

[14] Defendant's willful participation in this fraud dates back to the beginning of 2008, when the MSOP was removed from the purview of SOS. See: Aitkin County District Court File No. P7-05-00121. Hon. Robert B. Danforth, In the Matter of the Civil Commitment of: Donald Duane Hill.

displayed no real description of what for and/or whom was being billed. An odd phrase appeared on the EOMB, "IM IMD: INST FOR MENTAL DISEASE." There were claims of $84.20 and $64.41, but it was not understandable what the billing was for. The EOMB asks whether fraud is occurring. This EOMB is incorporated by reference.

47.  Plaintiff alleges that this EOMB serves as evidence that the MSOP is not a hospital and provides no hospital services and, despite Defendant's declaration under oath, via her petition of September 14, 2017, she is well aware that the MSOP is something other than a hospital.

48.  Plaintiff alleges that DLP wrote a letter dated Thursday, March 21, 2019, to Defendant to ask questions about the aforementioned EOMB. A copy of that letter is attached hereto. Plaintiff further alleges that, in this letter, DLP asked for details about every claim made and attached to SSN 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 and going back to September 21, 2017.

49.  Plaintiff alleges that, in response to DLP's letter, as mentioned in the preceding paragraph, that Defendant responded with a letter from Jessica G., Financial Assistance Supervisor, ACHHS. Plaintiff alleges further

20

that, in her response, Jessica G. makes it clear that
Defendant recognizes the MSOP is no longer properly
designated as an Institute of Mental Disease. By Agent G.,
the Defendant clarifies that the MSOP initiated the claim
for billing purposes; she provides no details about what
the United State Government is being billed for, nor proof
that the United States Government is being informed that
the MSOP is not a qualified hospital, has been removed from
the purview of SOS since 2008, does not operate under a
medical model, and provides no hospital services.

50.  Plaintiff alleges that on Tuesday, April 02, 2019, DLP
sent a letter to the address provided on the EOMB under
discussion to report apparent fraud related to the claim. A
copy of that letter is attached hereto.

51.  Plaintiff alleges that DLP received an unsigned letter
dated April 8, 2019, from the Minnesota Department of
Health, 444 Lafayette Road, St. Paul, MN 55164. This
correspondence seemed to respond to DLP's April 02, 2019,
letter to the address provided on the EOMB under
discussion. The response letter explained that the charges
were for A) Nerve transmission studies, 3-4 studies, and B)

Needle electromyography, each extremity, with related paraspinal areas.

52.  Plaintiff alleges that DLP wrote another letter to the address on the back of the EOMB under discussion and reported both the details of the April 8, 2019, letter from the Minnesota Department of Health and DLP's conclusion that fraud was absolutely involved. DLP made an offer to testify and asked for an opportunity to clear himself from obvious criminal consequences. This second letter was dated Saturday, April 13, 2019. A copy is attached hereto. No answer or response came back to DLP.

53.  Plaintiff alleges that, in so much as Defendant authorized this claim with a full understanding that the MSOP is not a qualified hospital and was removed from SOS in 2008—with a proven disclosure that DLP suffers under no psycho-pathology to hinder his ability to care for himself, Defendant's acts and omissions signify she is willfully and knowingly complicit in all the fraudulent undertakings alleged herein, a scheme to loot the CMS, the Social Security Administration, Medicaid, and/or Medicare, as set forth herein.

54.  Plaintiff has been subject to and injured by these alleged violations as a direct and proximate result of Defendant's acts and omissions as specifically set forth above. Unless relief is granted, Plaintiff will continue to be injured as a direct and proximate result of Defendant's acts and omissions specifically set forth above.

### Claim III

### VIOLATION OF THE
### FALSE CLAIMS ACT, 31 U.S.C.S. 3729-3733

55.  Plaintiff incorporates all previous allegations as if fully set forth herein.

56.  The False Claims Act provides that it is unlawful for any person to knowingly present or cause to be presented a false or fraudulent claim, as set forth herein for payment or approval. 31 U.S.C.S. 3729(a)(1). Plaintiff alleges that DLP received yet another EOMB on or about Wednesday, May 29, 2019. It is dated May 6, 2019, and concerns Claim Control Number 51909100400032820. This EOMB is incorporated by reference.

57.  Plaintiff alleges that this EOMB serves as evidence that the MSOP is not a hospital and provides no hospital services and, despite Defendant's avowal under oath, via

her petition of September 14, 2017, she is well aware that the MSOP is something other than a qualified hospital.

58.  Plaintiff alleges that DLP sent a letter dated Wednesday, May 29, 2019, to the address provided on the EOMB to report fraud. A copy of DLP's letter is attached hereto. DLP pointed out obvious violations of the FCA, 31 U.S.C.§ 3729 et seq., concerning the first and second EOMB discussed within this complaint and suggested that somebody needs to be prosecuted.

59.  Plaintiff alleges that, in so much as Defendant authorized this claim with the full understanding that the MSOP is not a qualified hospital and was removed from SOS in 2008—with a proven disclosure that DLP suffers under no psycho-pathology to hinder his ability to care for himself, Defendant's acts and omissions signify she is willfully and knowingly complicit in all the fraudulent undertakings alleged herein, a scheme to loot the CMS, the Social Security Administration, Medicaid, and/or Medicare as set forth herein.

60.  Plaintiff alleges that Claim Control Number 51909100400032820 isolates an intentional false claim for $235.76 upon the Plaintiff because, in the very least, it

does not define what is being billed for—what is the service under consideration, and Defendant already knows that the MSOP is not an Institute for Mental Disease.

61. Plaintiff has been subject to and injured by these alleged violations as a direct and proximate result of Defendant's acts and omissions as specifically set forth above. Unless relief is granted, Plaintiff will continue to be injured as a direct and proximate result of Defendant's acts and omissions specifically set forth above.

**Wherefore plaintiff demands:**

(a) That plaintiff have judgment against defendant for ten thousand dollars, plus three times $240,575.62 per diem, since the MSOP was removed from SOS purview in 2008, or the FCA allows, and interest, for so long as "the State's tactic" is employed as set forth herein;

(b) that plaintiff have judgment against defendant for ten thousand dollars, plus three times $84.20 and $64.41, and interest;

(c) that plaintiff have judgment against defendant for ten thousand dollars, plus three times $235.76, and interest;

(d) that plaintiff have judgment against the defendants for cost and disbursements; and

(e)  plaintiff seeks such other relief as authorized by the FCA, 31 U.S.C.§ 3729 et seq., and as may be deemed appropriate by the Court and allowed by law and equity.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## AFFIRMATION

I declare (certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on Monday, June 24, 2019.

Daniel Leroy Patten
1111 Hwy 73
Moose Lake, Minnesota [55767]