UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America
ex rel. Daniel Leroy Patten

Plaintiffs,

v.

Aitkin County Health and Human Services,

Defendant.

---

Case No. 19-cv-1712 (JNE/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge upon Defendant's Motion to Dismiss, [Docket No. 32], and the United States' Motion for Leave to File a Statement of Interest. [Docket No. 44]. Defendant's Motion to Dismiss was referred to the undersigned by the Honorable Joan N. Ericksen. (Order [Docket No. 37]). After the establishment and completion of a briefing schedule on the parties' Motions, the Court took the parties' Motions under advisement on the written submissions. (Order [Docket No. 58]).

For the reasons discussed herein, the United States' Motion for Leave to File a Statement of Interest, [Docket No. 44], is **GRANTED**. In addition, for the following reasons, the undersigned recommends that Defendant's Motion to Dismiss, [Docket No. 32], be **GRANTED in part** and **DENIED in part**.

**I.   Background**[1]

Daniel Leroy Patten, (hereinafter "Plaintiff"), is currently civilly committed to the Minnesota Sex Offender Program (hereinafter "MSOP"). (Compl., [Docket No. 1], at 1–8). Plaintiff purports to be bringing the present action on behalf of the United States against Aitkin

---

[1] The facts in this background section are taken from Plaintiff's Complaint.

County Health and Human Services, (hereinafter "Defendant"), generally alleging that Defendant violated the False Claims Act. (See, Id.).

According to the Complaint, Plaintiff alleges that in February 2013, the MSOP was moved out of the purview of State-Operated Human Services due to certain concerns regarding oversight and accountability. (Id. at ¶ 2). Plaintiff further alleges that based on the MSOP being removed from the purview of State-Operated Services, the MSOP is not, and has never been, accredited by any independent medical accreditation society, and therefore, the MSOP may not receive Medicare or Medicaid payments. (Id. at ¶¶ 3–4).

Plaintiff contends that on March 2, 2015, Nancy Johnson, the executive director of the MSOP at that time, appeared in an unrelated hearing before the Honorable Donovan W. Frank, (Id. at ¶ 15), and that Ms. Johnson testified that "the clientele at the MSOP [is] mostly not" persons "properly diagnosed as mentally ill and dangerous." (Id. at ¶ 15).

According to the allegations in Plaintiff's Complaint, on March 5, 2015, Jannine Hebert, the Clinal Director of the MSOP at that time, also provided testimony which "explained that the MSOP ha[d] not been a hospital since at least 2008," (Id. at ¶ 16), and Ms. Herbert's testimony further provided that "[t]he MSOP does not work using a medical model" and is not "concerned with patients needing medical care." (Id.). Ms. Herbert purportedly explained that "[t]he MSOP is a 'treatment program' that deals with folks who are 'not sick'" by providing a "psycho-educational program." (Id.).

Plaintiff also alleges that in 2017, the State of Minnesota began seeking to civilly commit him to the MSOP following the completion of the criminal sentence he was then serving. (Id. at ¶ 3–16). Plaintiff alleges that during those commitment proceedings he offered to undergo "an independent [mental health] evaluation" from a provider not associated with the State of Minnesota "to ascertain the true nature of his mental health," but his offer was rejected. (Id. at ¶¶ 3–12).

Plaintiff asserts that evidence was submitted demonstrating that he had "no recent or current mental health issues" at the time the State of Minnesota sought to civilly commit him. (Id. at ¶ 7).

Plaintiff further alleges that on October 23, 2017, "Defendant, in the person of Chris H., threatened [him] and told him that, if he did not execute a written request to have federal agencies reimburse Defendant for expenses that all financial assistance to [him] would be terminated." (Id. at ¶ 36). Plaintiff alleges that if he refused to execute the written request, then he would be left without a "lawful means to acquisition [sic] daily necessities such as body soap, clothing, or even stationery supplies." (Id.). Plaintiff avers that "Chris H." informed Plaintiff that "the MSOP gets all their coinage via these federal reimbursements." (Id.).

According to the Complaint, on February 22, 2018, during the final proceedings in Plaintiff's civil commitment, "Aric Welle, an Officer of the Minnesota Department of Corrections, testified that CORE Professional Services exists in Brainerd and Sartell, Minnesota," and he further "testified that multiple 'Sex Offenders' on his caseload use these community based services." (Id. at ¶ 22). Plaintiff further alleges that, in Minnesota, "CORE Professional Services offers the same basic psycho-educational teachings as does the MSOP." (Id. at ¶ 23).

Plaintiff was civilly committed to the MSOP for an indeterminate amount of time in July 2018.[2]

On February 23, 2019, Plaintiff received an Explanation of Benefits form regarding Claim Control Number 51904600400039993. (Id. at ¶ 46). Plaintiff asserts that the Explanation of Benefits references two charges, but it failed to provide a "real description of what for and/or whom was being billed," although it did state "IM IMD: INST FOR MENTAL DISEASE." (Id.). After receiving the Explanation of Benefits, Plaintiff, on March 21, 2019, sent a letter to Defendant

---

[2] In the present case, Plaintiff does not actually challenge his civil commitment. (See, Compl. [Docket No. 1]; Plf.'s Mem. [Docket No. 50]).

3

inquiring about the charges thereon, and he requested "details about every claim made" regarding his social security number since September 21, 2017. (Id.).[3]

On April 8, 2019, Plaintiff received a letter from the Minnesota Department of Health discussing Claim Control Number 51904600400039993. (Id. at ¶ 51). The letter explained that the charges on Claim Control Number 51904600400039993 were for nerve transmissions studies and needle electromyography. (Id.).

On May 26, 2019, Plaintiff received another Explanation of Benefits which concerned Claim Control Number 51909100400032820. (Id. at ¶ 56). This Explanation of benefits reflected a charge for $235.76. (Id. at ¶ 60).

On June 27, 2019, Plaintiff initiated the present action by filing his pro se Complaint. [Docket No. 1].[4] Because Plaintiff purported to be bringing this action "for the United States Government" based on violations of the False Claims Act, the United States Government was statutorily permitted time to consider whether or not it would intervene in the present action. Other than the John and Jane Does, Aitkin County Health and Human Services is the only named Defendant in Plaintiff's Complaint. (See, e.g., Compl., [Docket No. 1], at ¶¶ 1, 28–29).[5]

On the basis of allegations in his Complaint, Plaintiff alleges three causes of action which each allege a separate violation of the False Claims Act. (Compl., [Docket No. 1], at ¶¶ 30–60). In

---

[3] Plaintiff asserts that Defendant responded to this letter, however, he does not provide the date he received the responsive letter nor a copy of the responsive letter itself. (See, Id. at ¶ 49). Plaintiff alleges that the responsive letter "recognize[d] the MSOP is no longer properly designated as an Institute of mental Disease," and it "clarifies that the MSOP initiated the claim for billing purposes." (See, Id.). According to Plaintiff, however, the responsive letter did not provide any "details about what the United States Government is being billed for, nor proof that the Unites States Government is being informed that the MSOP is not a qualified hospital, has been removed from the purview of" State-Operated Human Services "since 2008, does not operate under a medical model, and provides no hospital services." (Id.).

[4] Pro se complaints and pleadings are to be construed liberally. Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). However, "[p]ro se litigants are not excused from complying with court orders or substantive and procedural law." Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)); Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

[5] On May 28, 2020, the United States, after being given extensions of time to consider the issue of intervention, declined to intervene in the present case. (Notice of Election to Decline Intervention [Docket No. 19]).

Count I, Plaintiff alleges that Defendant violated the False Claims Act by improperly receiving federal funds to pay for the charges incurred by Plaintiff due to his civil commitment. (Id. at ¶¶ 30–44). Specifically, Plaintiff alleges that the State of Minnesota initiated his civil commitment proceedings "to employ 'the State's tactic' to incarcerate" him "for the rest of his life as a means to defraud the United States Government by way of a billing scheme for unnecessary and undelivered medical care, a swindle that is, in every respect, a fraudulent means to embezzle funds from the United States Government, an anomalous method of boosting a rural Minnesota economy," and "a fraudulent system to endow a state prison." (Id. at ¶ 5).

In Count II, Plaintiff alleges Defendant violated the False Claims Act based on the charges provided for in the Explanation of Benefits concerning Claim Control Number 5190460040003993. (Id. at ¶¶ 44–54). Specifically, Plaintiff alleges that "in so much as Defendant authorized this claim with a full understanding that the MSOP is not a qualified hospital and was removed from" State-Operated Human Services "in 2008–with a proven disclosure that" Plaintiff "suffers under no psycho-pathology to hinder his ability to care for himself," Defendant's actions demonstrate a "scheme to loot the" federal government. (Id. at ¶ 53).

In Count III, Plaintiff alleges Defendant violated the False Claims Act based on the charge provided for in the Explanation of Benefits concerning Claim Control Number 51909100400032820. (Id. at ¶¶ 55–60). Here again, Plaintiff alleges that "in so much as Defendant authorized this claim with a full understanding that the MSOP is not a qualified hospital and was removed from" State-Operated Human Services "in 2008–with a proven disclosure that" Plaintiff "suffers under no psycho-pathology to hinder his ability to care for himself," Defendant's actions demonstrate a "scheme to loot the" United States government. (Id. at ¶ 59). Plaintiff further alleges that this Explanation of Benefits demonstrates a violation of the False Claims Act by Defendant

because "it does not define what is being billed for—what is the service under consideration, and Defendant already knows that the MSOP is not an Institute for Mental Disease." (Id. at ¶ 60).

## II.     The Government's Motion for Leave to File a Statement of Interest. [Docket No. 44].

Although the United States declined to intervene in the present action, the United States did file a Motion for Leave to File a Statement of Interest. [Docket No. 44]. Pursuant to 28 U.S.C. § 517, the Government seeks "to file a Statement of Interest to clarify important legal issues raised by Defendant in its Memorandum in Support of Motion to Dismiss." (Gov't's Mot. [Docket No. 44]). The Government included with its Motion, a copy of the brief Statement of Interest it seeks permission to file. [Docket No. 44-1].

Under 28 U.S.C. § 517 "[t]he Solicitor General, or any officer of the Department of Justice," is authorized to file a statement of interest "to attend to the interest of the United States in a suit pending in a court of the Unites States . . . ." 28 U.S.C. § 517. These statements of interest are a "means of communication from the executive branch to the judicial branch giving notice that the litigation adversely impacts upon the . . . interest of the United States so that the Court may take that circumstance into account if it becomes relevant to any legal arguments advanced by the Defendants in seeking dismissal." Creedle v. Gimenez, No. 17-cv-22477, 2017 WL 5159602, at *2 (S.D. Fla. Nov. 7, 2017) (quoting Ungaro-Benages v. Dresdner Bank AG, 2003 WL 25729923, at *2 (S.D. Fla. Feb. 20, 2003), aff'd 379 F.3d 1227 (11th Cir. 2004)).

Courts have permitted the Government to file a statement of interest pursuant to 28 U.S.C. § 517 regardless of whether or not the United States has intervened in a particular action. See, Liptak v. Ramsey County, No. 16-cv-225 (ADM/JSM), 2016 WL 5662082, at *4 n.5 (D. Minn. Aug. 24, 2016). "It is solely within the Court's discretion to permit or deny a statement of interest." LSP Transmission Holdings, LLC v. Lange, 329 F. Supp. 3d 695, 703 (D. Minn. 2018), aff'd sub nom. LSP Transmission Holdings, LLC v. Sieben, 954 F.3d 1018 (8th Cir. 2020). In exercising

6

that discretion, "the Court can consider whether the information is timely, useful, or otherwise necessary to the administration of justice." Id.

The Government's Statement of Interest was filed in a timely fashion. Both Plaintiff and Defendant were provided an opportunity to fully respond to the Government's Statement of Interest. Neither Defendant nor Plaintiff opposed the Government's Motion to File a Statement of Interest. Moreover, the Court cannot say that the Government's Statement of Interest is not useful, although the Government does specifically represent in its Statement of Interest that it "expressly does not address the merits of the underlying case." (Statement of Interest [Docket No. 44-1]).

Therefore, the Government's Motion for Leave to File a Statement of Interest, [Docket No. 44], is **GRANTED**. The Court accepts the Government's Statement of Interest as found at Docket No. 44-1.

### III.    Defendant's Motion to Dismiss. [Docket No. 32].

Defendant, Aitkin County Health and Human Services, moves this Court for an Order dismissing Plaintiff's Complaint. Specifically, Defendant argues that Plaintiff's Complaint should be dismissed with prejudice because Defendant is not an entity subject to suit under applicable law and because Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Def.'s Mem. [Docket No. 34]).[6]

Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b).

---

[6] Defendant also raises arguments related to whether or not Jessica Schultz, the social worker who Plaintiff alleges participated in his civil commitment proceedings, is entitled to absolute immunity. (See, Def.'s Mem., [Docket N0 34], at 4). As Defendant acknowledges, however, Ms. Schultz is not named as a Defendant in this action, and Plaintiff does not actually challenge his civil commitment in the present action. Defendant also proffers an argument in support of the contention that Plaintiff is not permitted to challenge his underlying civil commitment in this Court. (Def.'s Mem., [Docket No. 34], at 4–5). As the Court has discussed, however, Plaintiff is not challenging his underlying civil commitment in the present action. (See, Compl. [Docket No. 1]; Plf.'s Mem. [Docket No. 50]). Thus, the Court does not further consider either of these arguments.

7

Consequently, in this District, Courts look to Minnesota state law to determine whether a named county department can be subjected to suit by a plaintiff. See, Campbell v. Hennepin Cty. Sheriffs, No. 19-cv-1348 (DWF/ECW), 2020 WL 589547, at *6 (D. Minn. Jan. 21, 2020), report and recommendation adopted, 2020 WL 586770 (D. Minn. Feb. 6, 2020).

Minnesota state law "only grants the power to 'sue and be sued' to the county itself." Calhoun v. Washington Cty. Cmty. Servs. Child Support Unit, No. 18-cv-1881 (ECT/HB), 2019 WL 2079834, at *3 (D. Minn. Apr. 23, 2019) (quoting Minn. Stat. § 373.01, subd. 1(a)(1)), report and recommendation adopted, 2019 WL 2075870 (D. Minn. May 10, 2019). "[D]epartments within a county government are not subject to a court's jurisdiction, and county governmental departments cannot be named in lawsuits." Id. (citing Jones v. Brown Cty. Family Serv., No. 11-cv-568 (SRN/FLN), 2011 WL 3165052, at *1 (D. Minn. June 30, 2011), report and recommendation adopted, 2011 WL 3163308 (D. Minn. July 27, 2011); Flores v. United States, 689 F.3d 894, 899 n.4 (8th Cir. 2012)).

The Courts in the Eighth Circuit, including this District, have consistently held under Minnesota state law that county subdivisions, including county health and human services departments, are not legal entities subject to suit separate from the county itself. See, e.g., Everts v. U.S. Soc. Sec. Admin., No. 8-cv-4690 (DWF/FLN), 2009 WL 3062010, at *2 (D. Minn. Sept. 18, 2009); Neudecker v. Shakopee Police Dep't, No. 7-cv-3506 (PJS/JJG), 2008 WL 4151838, at *11 (D. Minn. Sept. 3, 2008), aff'd, 355 F. App'x 973 (8th Cir. 2009); Doe v. Mower Cty. Health & Human Servs. Office of Child Support, No. 18-cv-3221 (WMW/KMM), 2019 WL 3570870, at *4 (D. Minn. May 13, 2019), report and recommendation adopted, 2019 WL 3824256 (D. Minn. Aug. 15, 2019); Follis v. Minnesota Atty. Gen., No. 8-cv-1348 (JRT/RLE), 2010 WL 3399674, at *7 (D. Minn. Feb. 16, 2010), report and recommendation adopted, 2010 WL 3399958 (D. Minn. Aug. 26, 2010); Simon v. Anoka Cty. Soc. Servs., No. 12-cv-2754 (SRN/JSM), 2014 WL

8

6633077, at *7 (D. Minn. Nov. 21, 2014). For example, in Everts, a Court in this District "held that the Hennepin County Human Services and Public Health Department 'is a mere operating department of Hennepin County and, under Minnesota law, it is not capable of suing or being sued." Simon v. Anoka Cty. Soc. Servs., No. 12-cv-2754 SRN/JSM, 2014 WL 6633077, at *7 (D. Minn. Nov. 21, 2014) (quoting Everts v. U.S. Soc. Sec. Admin., No. 8-cv-4690 (DWF/FLN), 2009 WL 3062010, at *2 (D. Minn. Sept. 18, 2009)).

In the present case, the sole Defendant named in Plaintiff's Complaint is Aitkin County Health and Human Services. As Plaintiff appears to acknowledge in his reply memorandum, Defendant, Aitkin County Health and Human Services, is a subdivision or department of Aitkin County. (See, Plf. Mem., [Docket No. 50], at 1, 6). Indeed, every Court in this District to address the issue has held that a county health and human services department is a mere subdivision of the county itself. See, e.g., Everts v. U.S. Soc. Sec. Admin., No. 8-cv-4690 (DWF/FLN), 2009 WL 3062010, at *2 (D. Minn. Sept. 18, 2009); Neudecker v. Shakopee Police Dep't, No. 7-cv-3506 (PJS/JJG), 2008 WL 4151838, at *11 (D. Minn. Sept. 3, 2008), aff'd, 355 F. App'x 973 (8th Cir. 2009); Doe v. Mower Cty. Health & Human Servs. Office of Child Support, No. 18-cv-3221 (WMW/KMM), 2019 WL 3570870, at *4 (D. Minn. May 13, 2019), report and recommendation adopted, 2019 WL 3824256 (D. Minn. Aug. 15, 2019); Follis v. Minnesota Atty. Gen., No. 8-cv-1348 (JRT/RLE), 2010 WL 3399674, at *7 (D. Minn. Feb. 16, 2010), report and recommendation adopted, 2010 WL 3399958 (D. Minn. Aug. 26, 2010); Simon v. Anoka Cty. Soc. Servs., No. 12-cv-2754 (SRN/JSM), 2014 WL 6633077, at *7 (D. Minn. Nov. 21, 2014). Thus, pursuant to Minnesota law, Defendant, Aitkin County Health and Human Services, is not an entity subject to

suit because Defendant, Aitkin County Health and Human Services, is merely a subdivision of Aitkin County.[7]

Therefore, to the extent Defendant's Motion seeks on Order of this Court dismissing Plaintiff's Complaint, the undersigned recommends that the Defendant, Aitkin County Health and Human Services' Motion to Dismiss, [Docket No. 32], be **GRANTED in part** and **DENIED in part**.[8] The undersigned recommends that Plaintiff's Complaint be **DISMISSED without prejudice**.[9]

## IV. Conclusion

Therefore, based on the foregoing reasons, all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT** the United States' Motion for Leave to File a Statement of Interest, [Docket No. 44], is **GRANTED**.

---

[7] Because the Court concludes that Defendant, Aitkin County Health and Human Services, is not an entity subject to suit, the Court need not reach Defendant's alternative arguments for dismissal.

[8] In his responsive memorandum, Plaintiff raises the issue of amending his Complaint to "drop" Defendant, Aitkin County Health and Human Services, to be replaced by "Nicholas Anderson" who Plaintiff asserts filed a certain document which allegedly implicates him in the scheme alleged in Plaintiff's claim. (See, Plf.'s Mem., [Docket No. 50], at 3, 6). Plaintiff has not, however, actually filed a motion to amend his Complaint. To the extent Plaintiff intended his memorandum to seek leave to amend his Complaint, that request is improper. See, e.g., Local Rule 7.1; Local Rule 15.1; Alexander v. Hedback, No. 11-cv-3590 (ADM/JSM), 2012 WL 2004103, at *5 (D. Minn. June 5, 2012) (explaining that a party cannot amend its complaint to assert new causes of action through a memorandum), aff'd, 718 F.3d 762 (8th Cir. 2013). Moreover, Plaintiff's failure to comply with Local Rule 15.1, which requires a motion to amend a complaint be accompanied by "a copy of the proposed amended pleading," as well as, "a version of the proposed amended pleading that shows . . . how the proposed amended pleading differs from the operative pleading," renders nearly impossible this Court's function of determining whether or not Plaintiff's proposed amended pleading would be futile. Although Plaintiff is proceeding pro se, "[p]ro se litigants are not excused from complying with court orders or substantive and procedural law." Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)); see, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). Plaintiff has not properly moved to amend his Complaint in the present case, and no such request is now properly before this Court.

[9] Defendant requested that Plaintiff's Complaint be dismissed with prejudice; however, the undersigned recommends that the present action be dismissed without prejudice. Although Defendant, Aitkin County Health and Human Services, is not an entity subject to suit, Aitkin County is an entity that may be subject to suit. The finding that Defendant, Aitkin County Health and Human Services, is an entity not subject to suit is not the same as an adjudication on the merits of Plaintiff's claims. Thus, the undersigned recommends that Plaintiff's Complaint be dismiss without prejudice. Therefore, to the extent, Defendant seeks to have Plaintiff's Complaint dismissed with prejudice, the undersigned recommends that Defendant's Motion be **DENIED**.

Further, based on the foregoing reasons, all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion to Dismiss, [Docket No. 32], be **GRANTED in part** and **DENIED in part**, as set forth above; and

2. Plaintiff's Complaint be **DISMISSED without prejudice**.

Dated: January 28, 2021                              s/Leo I. Brisbois
                                                     Hon. Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).